**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
────────────────────────────────

FADI NAYELI MORALES MENDEZ,

|  |  |  |
|---|---|---|
|  | Petitioner, | 9:26-cv-337 |
|  |  | (ECC) |

v.

FIELD OFFICE DIRECTOR, U.S.
Immigration & Customs Enforcement;
Albany Field Office; DAVID FAVRO, in his
official capacity as Sheriff/Warden, Clinton
County Correctional Facility; KRISTI NOEM, in
her official capacity as Secretary of Homeland
Security, TODD LYONS, in his official capacity
as Acting Director, U.S. Immigration and Customs
Enforcement; and PAMELA BONDI, in her
official capacity as Attorney General,

                              Respondents.
────────────────────────────────

Matthew K. Borowski, Esq., *for Petitioner*
David M. Katz, Assistant United States Attorney, *for Federal Respondents*

**Hon. Elizabeth C. Coombe, United States District Judge:**

**MEMORANDUM DECISION AND ORDER**

On February 18, 2026, Petitioner Fadi Nayeli Morales Mendez (Mendez), a noncitizen who has been present in the United States since August 2024, was taken into custody by Immigration and Customs Enforcement (ICE). Petition (Pet.), Dkt. Nos. 1 ¶ 1; 9-4 at 2.[1] On March 3, 2026, while Petitioner was detained at the Clinton County Correctional Facility in Plattsburgh, New York, she filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. Pet. ¶¶ 1, 6, 10. Petitioner seeks immediate release, or in the alternative, a bond hearing, and attorney's fees

────────────

[1] Page numbers refer to the pagination generated by ECF, unless otherwise noted.

and costs under the Equal Access to Justice Act, as amended, 28 U.S.C. § 2412.  *Id.* at 12-13; Dkt. No. 10 at 9.

On March 3, 2026, the same day that the petition was filed, the Court issued an order directing Respondents to show cause why the petition should not be granted, setting a briefing schedule, scheduling oral argument for March 13, 2026, and prohibiting Respondents from moving Petitioner outside the Northern District of New York while the petition is pending.  Dkt. No. 2. This injunction remains in effect and shall remain in effect following this memorandum decision and order.  The petition is fully briefed, Dkt. Nos. 1, 9, 10, and oral argument was held on March 13, 2026.

## I.    Background

Petitioner, a citizen of Guatemala, entered the United States without inspection on August 13, 2024, near El Paso, Texas.  Pet. ¶ 1.  On August 16, 2024, she was released on her own recognizance and served with an I-862 Notice to Appear stating that she was subject to removal pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act.  Dkt. No. 9-4 at 9, 13. Petitioner later filed an application for asylum.  Pet. ¶ 1.  At a March 13, 2026 hearing, counsel for Mendez represented that asylum application is still pending.

On February 18, 2026, Petitioner reported to the ICE Enforcement and Removal Operations Sub Office in Albany, and she was taken into custody.  Pet. ¶ 1; Dkt. No. 9-4 at 2.  On the same day, she was served with a Warrant for Arrest of Alien, I-200 that cites Section 236 (8 U.S.C. § 1226) and 287 (8 U.S.C. §1357) of the Immigration and Naturalization Act, but does not mention Section 235 (8 U.S.C. §1225(b)(2)(A)).  Dkt. No. 9-4 at 4.  ICE transferred her to the Clinton County Correctional Facility, and Petitioner remains detained there.  Pet. ¶ 6.

## II.    JURISDICTION

"'28 U.S.C. § 2241 authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws . . . of the United States.'"" *Gaspar v. Akshar,* 9:26-cv-118 (BKS), Dkt. No. 13, at 4 (N.D.N.Y. Feb. 17, 2026) (quoting *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).   In addition, "'[f]ederal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention.'"  *Id.* at 5 (quoting *Lopez v. Sessions,* No. 18-cv-4189, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Demore v. Kim,* 538 U.S. 510, 516-17 (2003)).

## III.    DISCUSSION

### A.  Statutory Basis for Detention

Petitioner argues that the applicable statute for her detention is 8 U.S.C. § 1226(a). "Detention pending adjudication of removal under Section 1226 is discretionary and affords noncitizens detained thereunder the right to an initial determination as to eligibility for release and the opportunity for a bond hearing upon detention." *Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *2 (S.D.N.Y. Nov. 4, 2025).  In contrast, Respondents argue that 8 U.S.C. § 1225(b)(2)(A) applies.  Detention under that provision is mandatory "with rare exceptions not relevant here." *Cardenas v. Almodovar,* No. 25-cv-9169, 2025 WL 3215573, at *1 (S.D.N.Y Nov. 18, 2025).

The issue of which provision applies to noncitizens already in the United States, like Petitioner, has been the subject of habeas petitions filed throughout the country.  There is no binding authority from the Supreme Court or the Second Circuit, and the two Circuits that considered this issue have reached different conclusions.  The Fifth Circuit agreed with the

Government's position.  *Buenrostro-Mendez v. Bondi,*  No. 25-20496, 2026 WL 323330 (5th Cir. Feb. 6, 2026).  But, in the context of whether the Government was likely to succeed on the merits of its argument that noncitizens arrested by ICE without a warrant could be held under Section 1225(b)(2)(A), the Seventh Circuit disagreed with the Government's position.  *Castanon-Nava v. U.S. Dep't of Homeland Sec.,* 161 F.4th 1048, 1062 (7th Cir. 2025).

Although some district courts have agreed with the Government's position, a substantial majority have not.  *See Barco Mercado v. Francis,* No. 25-cv-6582, 2025 WL 3295903, at *4 (S.D.N.Y. Nov. 26, 2025) (explaining that the Government's position "has been challenged in at least 362 cases in federal district courts" and the "challengers have prevailed, either on a preliminary or final basis in 350 of those cases decided by over 160 different judges sitting in about fifty different courts spread across the United States.").  Here in the Second Circuit, an overwhelming majority of district courts have adopted the majority position.  *See Chen v. Almodovar,* 25 Civ. 9670, 2026 WL 100761, at *14 (S.D.N.Y. Jan. 14, 2026) (acknowledging in a case adopting the minority position that "the overwhelming majority of judges in [the Southern District of New York] and around the country to consider the issue have reached a contrary conclusion" and that its holding "puts it in the minority of those courts in the Second Circuit to have considered the question"); *see also Cardenas,* 2025 WL 3215573, at *1 ("by this Court's count, there are scores of decisions—in this Circuit and beyond—on the Section 1226(a) side of the split") (collecting cases).   In addition, judges in this district have agreed with the majority position.  *See Noguez v. Brophy et al.*, Case No. 26-cv-30, Dkt. No. 14 at 6 (N.D.N.Y. Feb. 13, 2026) (agreeing with the majority position and noting that the "other Northern District Judges . . . also reached the same conclusion") (D'Agostino, J.); *Gaspar,* Dkt. No. 13 at 12 (agreeing with the majority position) (Sannes, C.J.); *Alvarez v. Philips et al.,* Case No. 26-cv-58, Dkt. No. 11 at 6

(N.D.N.Y. Feb. 17, 2026) (same) (Brindisi, J.); *Aguiar Olivares v. ICE Custodian and Broome County Correctional Facility,* Case No. 26-cv-203, Dkt. No. 18 at 18 (same) (Nardacci, J.).

This Court agrees with the majority position and concludes that Petitioner, who was released into the United States on her own recognizance approximately 18 months before her February 2026 arrest, was not seeking admission when she was arrested and that, for the persuasive reasons articulated by other district courts, Section 1226(a), not Section 1225(b)(2)(A) applies. *See, e.g. Gaspar,* Dkt. No. 13, at 9-15 (collecting cases); *Cardenas,* 2025 WL 3215573, at *2 (relying on "the thorough and well-reasoned analysis of the issue" by the judges in, among others cases, *Tumba Huamani,* 2025 WL 3079014, at *2-5; *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 483-91 (S.D.N.Y. 2025). This "conclusion is compelled by the text of Section 1225 itself," "by the context and 'overall statutory scheme,'" and "by the amendment history of Section 1226, including [the Laken Riley Act] amendment enacted just months ago." *Cardenas,* 2025 WL 3215573, at *2 (citations omitted). *See also Gaspar,* Dkt. No. 13 at 12-15; *Quituizaca v. Bondi,* No. 25-cv-6527, 2025 WL 3264440, at *3-*4 (W.D.N.Y. Nov. 24, 2025). As a result, under the circumstances of this case, the Court finds that Petitioner "may only be subject to detention as a matter of discretion" under Section 1226(a). *Singh v. Maldonado,* No. 26-cv-19, 2026 WL 233216, at *8 (E.D.N.Y. Jan. 29, 2026).

### B.    Required Due Process

The next question is whether Petitioner's detention violates due process. Noncitizens, like Petitioner, are protected by the Fifth Amendment's Due Process Clause guaranteeing that they cannot be deprived of liberty "without due process of law." *Zadvydas v. Davis,* 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* at 690. In addition, that

liberty interest protects people from detention without "notice of the case against him and opportunity to meet it." *Matthews v. Eldridge,* 424 U.S. 319, 348 (1976). "Habeas review is available to challenge 'the lawfulness of detention when it is first imposed' as well as 'to challenge whether, at some point, an ongoing detention has become unlawful.'" *Gaspar,* Dkt. No. 13 at 15 (quoting *Velasco Lopez v. Decker,* 978 F.3d 842, 850 (2d Cir. 2020)). "'The Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections required in courts of law, call for the most searching review.'" *Id.* at 15-16 (quoting *Velasco Lopez,* 978 F.3d at 850 (additional citation omitted)).

Courts apply the three-factor balancing test articulated in *Matthews*: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probative value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *Gaspar,* Dkt. No. 13 at 16 (quoting *Velasco Lopez,* 978 F.3d at 850) (in turn quoting *Matthews,* 424 U.S. at 335).

Regarding the first factor, Petitioner has established a liberty interest in being released from imprisonment. *See Crespo Tacuri v. Genalo,* No. 25-cv-6896, 2026 WL 35569, at *7 (E.D.N.Y. Jan. 6, 2026) (concluding that Petitioner had a "cognizable private interest in being freed from unlawful detention") (citing, among others, *Hamdi v. Rumsfeld,* 542 U.S. 507, 529 (2004) ("[T]he most elemental of liberty interests [is] the interest in being free from physical detention by one's own government.")).

The Federal Respondents argue that "it is not a violation of 1226(a) or due process to detain a Petitioner pending the outcome of a bond hearing." Dkt. No. 9 at 20. But an "individualized

custody determination" is required by § 1226(a) and its implementing regulations. *Rodriguez-Acurio v. Almodovar,* No. 2:25-cv-6065, 2025 WL 3314420, at \*29 (E.D.N.Y. Nov. 28, 2025)[2] (quoting *Lopez Benitez,* 795 F. Supp. 3d at 492); *see also Hyppolite v. Noem,* 808 F. Supp. 3d 474, 485 (E.D.N.Y. 2025) ("the discretionary authority in § 1226(a) requires an individualized bond determination before a noncitizen may be taken into custody") (citing *Velesaca v. Decker*, 458 F. Supp. 3d 224, 241 (S.D.N.Y. 2020) (noting that the government did "not dispute that 8 U.S.C. § 1226(a) and its implementing regulations require ICE officials to make an individualized custody determination")).

Section 1226(a) states that "[o]n a warrant issued by the Attorney General," a noncitizen "may be arrested and detained pending a decision on" removal of the noncitizen and that the Attorney General "may continue to detain the arrested alien" or "may release" the noncitizen on "bond" or "conditional parole." 8 U.S.C. § 1226(a). In addition, "the regulations implementing Section 1226(a) delegate to DHS officers the authority to grant bond or conditional parole, and pursuant to such authority, a DHS officer must make an individualized determination as to whether detention is appropriate based on two factors—whether the noncitizen is (1) a 'danger to property or persons' and (2) is 'likely to appear for any future proceeding.'" *Rodriguez-Acurio,* 2025 WL 3314420, at \*28 (quoting 8 C.F.R. § 1236.1(c)(8) and citing *Lopez Benitez,* 795 F. Supp. 3d at 493). Further, the "noncitizen has an 'opportunity to appeal a detention decision' by the DHS officer who conducted this individualized assessment 'to an immigration judge who then conducts their own assessment of the noncitizens' flight risk and dangerousness, among other factors.'" *Id.*

---

[2] The Federal Respondents argue that "the warrant here . . . renders immediate release inappropriate here and distinguishes *Rodriguez-Acurio*[.]" Dkt. No. 9 at 16. In fact, a warrant was issued in *Rodriguez-Acurio. See* 2025 WL 3314420 at \*5 (explaining that petitioner "was served with a Warrant for Arrest of Alien, Form I-200. . . .").

(quoting *Lopez Benitez,* 795 F. Supp. 3d at 493 (citing 8 C.F.R. § 1003.19(d)).  "Accordingly, Section 1226(a) and its implementing regulations vest DHS with 'broad authority to arrest and detain noncitizens, but due process must account for the wide discretion that Section 1226(a) vests in the Government to arrest any person in the United States suspected of being removable' especially in light of the individualized custody determination that Section 1226(a) and its implementing regulations require." *Rodriguez-Arcurio,* 2025 WL 3314420, at \*29 (quoting *Lopez Benitez,* 795 F. Supp. 3d at 492).  Petitioner "therefore has a weighty private interest in being granted parole or bond under Section 1226(a) pending removal proceedings." *Id.*

Regarding the second factor, as the Federal Respondents do not dispute, Petitioner did not have an opportunity to post bond or argue for release on conditions.  In addition, there is nothing in the record indicating that (1) there were changed circumstances between when she was released on her own recognizance into the United States and when she was arrested that support the change in her detention status, (2) Petitioner is currently a risk of flight or a danger to the community, or (3) anyone considered whether, given her specific situation, Mendez was a risk of flight or a danger to the community.  As a result, there is a high risk of erroneous deprivation of Petitioner's liberty. *See Gaspar,* Dkt. No. 13 at 17 ("The risk of erroneous deprivation of Petitioner's liberty is therefore high.") (citing *Valdez v. Joyce,* 803 F. Supp. 3d 213, 218 (S.D.N.Y. 2025) ("Petitioner's re-detention without any change in circumstances or procedure establishes a high risk of erroneous deprivation of his protected liberty interest.") and *Singh,* 2026 WL 233216, at \*9 ("finding 'the risk of erroneous deprivation of Petitioner's liberty interest' was 'high' where it was undisputed 'that no individualized determination was made prior to or contemporaneously with the decision to detain Petitioner in December 2025, and there was no change in circumstances from the time

DHS released Petitioner on his own recognizance in March 2024 to his re-arrest and detention in December 2025")).

Regarding the third factor, despite the Government's "interests in 'ensuring the appearance of aliens at future immigration proceedings' and 'preventing danger to the community,'" the Court concludes that interest here is low given that there is no evidence that Petitioner is a danger to the community or a flight risk. *Gaspar,* Dkt No. 13 at 17 (citing *Crespo Tacuri,* 2026 WL 35569 at *7 ("[T]he government's interest in continued detention is slight insofar as petitioner was detained without an individualized custody determination that evaluated dangerousness and flight risk or any articulated change in circumstances.")).

The Court therefore finds that Petitioner's detention violates her rights under the Due Process Clause of the Fifth Amendment.

### C.    Remedy

The appropriate remedy is release. *See Gaspar,* Dkt. No. 13 at 18-19 (collecting cases); *Cardenas,* 2025 WL 3215573, at *3 (citing *Lopez Benitez,* 795 F. Supp. 3d at 498-99 (reaching that result by applying the *Matthews* test); *Tumba Huamani,* 2025 WL 3079014, at *8-9 (reaching that result, but concluding that the *Matthews* test does not apply)); *see also Rodriguez-Acurio,* 2025 WL 3314420, at *32-33 (concluding that where ICE detained the Petitioner "under the wrong statute and without any notice or opportunity to be heard, much less the procedures required under Section 1226(a)," then "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity for relief because the detention without adequate pre-deprivation procedures has already been carried out.")

In addition, Respondents are enjoined from denying Petitioner bond in any subsequent proceeding on the grounds that she must be detained under 8 U.S.C. §1225(b)(2)(A) absent a

change in relevant circumstances.  *See Rodriguez-Acurio,* 2025 WL 3314420, at \*32-33 (concluding that "[t]his additional relief is necessary in order to ensure that the release of [Petitioner] pursuant to this Opinion and Order is not rendered meaningless" and, "[a]s a result, the relief ordered here falls within the 'core of habeas.'") (quoting *Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 119 (2020)).

For these reasons, it is

**ORDERED** that the Petition for a writ of habeas corpus, Dkt. No. 1, is **GRANTED**; and it is further

**ORDERED** that Respondents shall immediately release Petitioner Fadi Nayeli Morales Mendez from custody; and it is further

**ORDERED** that Respondents shall certify compliance with this Order by filing a status report by 5 p.m., on March 17, 2026; and it is further

**ORDERED** that pending the issuance of any final removal order against Petitioner Fadi Nayeli Morales Mendez, Respondents are enjoined from denying her bond in any subsequent proceeding on the basis that she must be detained pursuant to 8 U.S.C. § 1225(b)(2)(A) absent a change in relevant circumstances; and it is further

**ORDERED** that Petitioner's request for reasonable attorney's fees and costs under the Equal Access to Justice Act  is **GRANTED** and any request for such fees and costs shall be filed by March 30, 2026, and any response shall be filed by April 10, 2026; and it is further

**ORDERED** that the Clerk of the Court enter judgment accordingly and close this case.

**IT IS SO ORDERED.**

Dated: March 16, 2026

Elizabeth C. Coombe
U.S. District Judge